**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JERRY GREENWOOD et al., | |
| Plaintiffs, | 3:16-cv-00527-RCJ-VPC |
| vs. | **ORDER** |
| OCWEN LOAN SERVICING LLC et al., | |
| Defendant. | |

This is an action to quiet title. Now pending before the Court is a defensive motion for summary judgment. (Mot. Summ. J., ECF No. 32.) For the reasons given herein, the Court grants the motion.

**I.  FACTS AND PROCEDURAL HISTORY**

On or about June 20, 2006, Plaintiffs Jerry and Gina Greenwood borrowed $691,000 from IndyMac Bank, FSB, to pay off a prior existing mortgage and home equity loan on their residence at 1123 Jo Lane in Gardnerville, Nevada ("the Property"). (Compl. ¶¶ 10–11, ECF No. 1-2.) The Greenwoods signed an Adjustable Rate Note containing their promise to repay the loan on specified terms. The Note was secured by a deed of trust ("DOT") identifying IndyMac as the Lender, First American Title Insurance Co. as the Trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the Beneficiary. (Clark County DOT, ECF No. 1-2 at 25.) Although the Property is located in Douglas County, Nevada, the DOT was originally recorded in Clark

County on June 28, 2006—a mistake which was not corrected until September 18, 2009. (*See* Douglas County DOT, ECF No. 1-2 at 55.)

In January 2008, the Greenwoods stopped making payments on the Note. (Gina Greenwood Dep. 31:17–32:11, ECF No. 32-2.) On July 11, 2008, IndyMac was closed by the Office of Thrift Supervision ("OTS"). OTS chartered a new institution, IndyMac Federal Bank, FSB ("IndyMac Federal") and appointed the Federal Deposit Insurance Corporation ("FDIC") as conservator. On March 19, 2009, Defendant OneWest Bank, FSB ("OneWest") acquired substantially all of the assets and mortgage servicing rights of IndyMac Federal from the FDIC, and thus became the servicer of the Greenwoods' loan.

On September 23, 2009, the Greenwoods filed for Chapter 7 bankruptcy. *See In re Greenwood*, No. 09-bk-53338-GWZ (Bankr. D. Nev. Sept. 23, 2009). In Schedule A of their schedule of assets and liabilities, relating to real property, the Greenwoods listed ownership of the Property. In Schedule D, relating to creditors holding secured claims, the Greenwoods listed the DOT, but included a notation that it was "never recorded by lender in Douglas County." (Chapter 7 Voluntary Petition 12, ECF No. 33-5.) Of course, at the time of filing the bankruptcy petition, this was no longer true; the DOT had been re-recorded in Douglas County five days prior. Thereafter, on January 19, 2010, an assignment of deed of trust was recorded in Douglas County as Document No. 757313, evidencing the transfer of the Note and DOT from IndyMac Federal to OneWest.

On April 18, 2011, the Greenwoods filed an adversary proceeding against OneWest in the bankruptcy court, seeking to invalidate the Note and DOT on the basis that the DOT was initially recorded in the wrong county. *See Greenwood v. OneWest Bank, FSB*, No. 11-ap-05038-GWZ (Bankr. D. Nev. Apr. 18, 2011). On August 25, 2011, Angelique L. M. Clark, trustee of the Greenwoods' Chapter 7 estate, was permitted to intervene in the adversary proceeding as the

real party-in-interest, in order to protect the interests of the unsecured creditors of the estate and prevent the Greenwoods from obtaining a windfall. The following day, Trustee Clark filed her first amended complaint, asserting that the September 2009 re-recordation of the DOT in Douglas County constituted a "transfer" under 11 U.S.C. § 101(54)(A) (i.e., "the creation of a lien") which, having been made within ninety days before the Chapter 7 petition was filed, could be avoided under 11 U.S.C. § 547(b).

On April 3, 2012, the bankruptcy court approved a settlement agreement in the adversary proceeding, between Trustee Clark and OneWest. The agreement provided that in exchange for a payment of $95,000 by OneWest, Trustee Clark would dismiss the adversary proceeding with prejudice "so that all right, title and interest in, to, arising from and associated with the IndyMac DOT, and the lien created thereby, and the Property will remain with and be preserved for the benefit of [OneWest] . . . ." (Order Approving Settlement 3–4, ECF No. 33-3.) Trustee Clark also waived, on her own behalf and on behalf of the Greenwoods' Chapter 7 estate, any and all further claims, "known or unknown, against [OneWest] . . . arising out of or related to the IndyMac DOT, the lien created thereby, the Property and/or the above-captioned adversary proceeding and Chapter 7 case." (*Id.* at 4.) The Greenwoods had objected to the settlement agreement on the basis of a claimed homestead exemption, which they asserted was prior to the DOT. The bankruptcy court addressed the objection on its merits and overruled it on multiple grounds. (*See id.* at 4–5.) On April 25, 2012, pursuant to the settlement agreement, the Greenwoods' adversary proceeding was dismissed with prejudice.

The Greenwoods then appealed several of the bankruptcy court's orders to the Bankruptcy Appellate Panel ("BAP"), including the order approving the settlement agreement and the order dismissing the adversary proceeding with prejudice. On August 6, 2012, the BAP ordered the appeals dismissed for lack of standing, reasoning that the Greenwoods' claimed

homestead exemption was not valid "in light of the voluntary transfer of the Property," as there was "no evidence that the transfer was involuntary." The Greenwoods appealed the BAP's dismissal to the Ninth Circuit.

On September 6, 2012, with their appeal pending at the Ninth Circuit, the Greenwoods filed a notice of filing of lis pendens. On October 15, 2012, OneWest moved for an order striking and cancelling the lis pendens and for sanctions against the Greenwoods' attorney for bad faith. OneWest noted in its motion that Jerry Greenwood had filed the lis pendens in Douglas County jointly on behalf of himself and Gina Greenwood, though he had quitclaimed his interest in the Property to Gina the previous month. Of course, OneWest also stressed the fact that the bankruptcy court had just approved a settlement agreement in the adversary proceeding stipulating, among other things, that OneWest held a valid security interest in the Property. On May 21, 2013, the bankruptcy court ordered the motion taken off calendar, ordered the Greenwoods to remove the notice of filing of lis pendens, and warned that no discharge would be granted in the underlying Chapter 7 case until the Greenwoods complied. In substance, the bankruptcy court appears to have granted the motion in part and denied it in part, ordering the lis pendens removed, but declining to impose sanctions.

The Greenwoods then appealed the order requiring them to remove the lis pendens, which appeal was referred to this Court. On July 30, 2013, the Court dismissed the appeal for lack of standing: "As Chapter 7 Debtors, Appellants have no standing to litigate any purported interests in the property of the bankruptcy estate except through the Trustee. The Trustee is joined as an Appellee in the present matter, plainly indicating that she has refused to pursue Appellants' claims." *In re Greenwood*, No. 3:13-cv-00293, 2013 WL 11319429, at *1 (D. Nev. July 30, 2013). Again, the Greenwoods appealed the dismissal to the Ninth Circuit. Thereafter,

on November 1, 2013, the bankruptcy court issued its final decree, discharging Trustee Clark and closing the Greenwoods' Chapter 7 case.

Finally, on February 13, 2015, the Ninth Circuit ruled against the Greenwoods on both of their appeals. *See In re Greenwood*, 593 F. App'x 680, 681 (9th Cir. 2015); *Greenwood v. Onewest Bank, FSB*, 593 F. App'x 681 (9th Cir. 2015). In addressing the Greenwoods' challenge to the settlement agreement and order dismissing the adversary proceeding with prejudice, the Court of Appeals stated:

> In order to show that their homestead exemption might be preserved under § 522(g)(1) as against the lienholder, the Greenwoods were required to demonstrate that their grant of a security interest in excess of the property's value was not voluntary. 11 U.S.C. § 522(g)(1); *see also Rodriguez v. Dorine's Bail Bonds, Inc. (In re Rodriguez)*, 361 B.R. 887, 892 (Bankr. D. Ariz. 2007). There is no evidence in the record indicating that the transfer of the deed of trust encumbering the home was involuntary, and the Greenwoods offer none. As a result, the transfer is ineligible for exemption under § 522(g)(1), and the Greenwoods lack a personal stake in the challenged settlement order and related orders sufficient to establish standing.

*In re Greenwood*, 593 F. App'x at 681.

On December 26, 2014, the Greenwoods received a "Mortgage Securitization Audit and Foreclosure Forensics Report" with respect to the DOT, having commissioned an expert investigation into the securitization of their loan. (Resp. 13–14, ECF No. 34.) Their purpose in requesting the audit was to be able to show "[t]hat nobody really knows they own the loan." (Gina Greenwood Dep. 14:19–15:12, ECF No. 32-2.) On September 9, 2016, based on what they claim to be a "botched securitization," the Greenwoods filed this action seeking a decree that they are the owners of the Property, and that "Defendants, and each of them, have no estate, mortgage, title, or interest in or to the Greenwoods' Property." (Compl. 12, ECF No. 1-2.)

Defendants Ocwen Loan Servicing, LLC, U.S. Bank, and MERS now move for summary judgment. (Mot. Summ. J., ECF No. 32.)

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**III. ANALYSIS**

The Greenwoods' Complaint alleges that the securitization of their loan was deficient in that it violated multiple binding contracts governing the securitization process:

> In contravention of the binding SWSA, AAA, MLSAA, Prospectuses, and the governing Trust Agreement, there is no record of the required intervening assignments of the Greenwoods' Note, from IndyMac to Lehman Capital, from Lehman Capital to Lehman Holdings, from Lehman Holdings to SASC, and ultimately from SASC to U.S. BANK . . . . A current review of the chain of title of the Greenwoods' Property from the land records of Douglas County, Nevada, does not show any assignment of the Greenwoods' Deed of Trust from the original lender, IndyMac, to any entity, within the aforementioned 2006 REMIC

>    deadline date. This was a material breach of the binding securitization agreements and the governing trust instrument . . . .

(Compl. ¶¶ 41–43, ECF No. 1-2.) Therefore, the Greenwoods argue, there is no current identifiable beneficiary, mortgagee, or valid lender under the DOT, and the Defendants have no valid mortgage, title, or interest in the Property.

The Greenwoods' attempt to quiet title in themselves is unavailing. First, the validity of OneWest's interest in the Property and its ability to enforce the DOT have already been finally adjudicated by the bankruptcy court, and thus the claims asserted here are precluded. During the pendency of their Chapter 7 case, the Greenwoods filed an adversary proceeding against OneWest, challenging the validity of OneWest's lien. The bankruptcy court approved a voluntary settlement between the Chapter 7 trustee and OneWest, which provided that "all right, title and interest in, to, arising from and associated with the IndyMac DOT, and the lien created thereby, and the Property will remain with and be preserved for the benefit of [OneWest] thereby allowing [OneWest] . . . to exercise all rights and remedies associated with the IndyMac DOT, the lien created thereby and the Property." (Order Approving Settlement 3–4, ECF No. 33-3.)

In approving the settlement and rejecting the Greenwoods' objections to it, the bankruptcy court stated that "principles of equity will not permit the Debtors to obtain a windfall at the expense of [OneWest] and their unsecured creditors after they received the benefits of the obligation secured by the IndyMac DOT and granted a consensual lien on the Property in exchange for those benefits." (*Id.* at 5.) In conclusion, the bankruptcy court noted OneWest's "authority to exercise any contractual or state law rights and remedies it may have under the IndyMac DOT including, but not limited to, foreclosing on the Property." (*Id.* at 6.) Therefore, the validity of OneWest's interest in the Property and right to enforce the DOT were actually and finally litigated by the Greenwoods' bankruptcy trustee in the adversary proceeding, and the

issue is now precluded under *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1051, 194 P.3d 709, 711 (2008).[1]

In addition, the Greenwoods lack standing to challenge the assignments of the Note and DOT or to assert claims arising under the trust purchase agreement or Pooling and Servicing Agreement ("PSA") surrounding the securitization of the Note. The Greenwoods are neither parties to nor intended beneficiaries of any of these assignments, and thus they have no standing to challenge their validity. *See Wood v. Germann*, 130 Nev. Adv. Op. 58, 331 P.3d 859, 862 (2014). In fact, the Greenwoods apparently concede their lack of standing both in the Complaint and in their Response to the instant motion. (*See* Compl. ¶ 55 ("[T]he Greenwoods do not claim any standing in the securitization transaction . . . ."); Resp. 16 (acknowledging their lack of standing under *Wood* and asking to amend their Complaint).)

At the time the Greenwoods filed this case, it was well established in Nevada that a borrower lacks standing to challenge the transfer of his loan pursuant to a PSA, even where securitization is carried out in violation of the governing securitization agreements. *See, e.g.*, *Reyes v. GMAC Mortg. LLC*, No. 2:11-CV-100, 2011 WL 1322775, at *2 (D. Nev. Apr. 5, 2011) (Mahan, J.) ("[T]he securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust."); *Viloria v. Premium Capital Funding LLC*, No. 2:12-CV-00406, 2012 WL 4361252, at *3 (D. Nev. Sept. 20, 2012) (Dawson, J.); *Shaw v. CitiMortgage,*

---

1 In response, the Greenwoods do not argue that they are not precluded from relitigating the validity of OneWest's DOT. Rather, they rely on *Edelstein v. Bank of New York Mellon*, 128 Nev. Adv. Op. 48, 286 P.3d 249, 250 (2012), to assert that in order to prevail in this case, the Defendants must show they were entitled to enforce both the Note and DOT as of the date of the Complaint's filing. This is an entirely new argument in this case, which does not appear in the Complaint, and which essentially sweeps aside the Greenwoods' original "botched securitization" theory. Furthermore, there is clearly no claim under *Edelstein* until a party actually attempts foreclosure: "Indeed, while entitlement to enforce both the deed of trust and the promissory note is required to foreclose, nothing requires those documents to be unified from the point of inception of the loan." There is no impending foreclosure here.

*Inc.*, No. 3:13-CV-0445, 2015 WL 476161, at *2 (D. Nev. Feb. 5, 2015) (Hicks, J.). Indeed, *Wood* was decided a full two years before this action was filed. Nonetheless, the Greenwoods proceeded to bring this case, making precisely the same argument rejected by the Nevada Supreme Court in *Wood*—that post-closing-date assignments of the DOT were made in violation of the PSA, and were thus invalid. The assertion and maintenance of this type of argument has been held to be grounds for sanctions by other courts in this District. *See, e.g.*, *Shaw v. CitiMortgage, Inc.*, No. 3:13-CV-0445, 2015 WL 2194210, at *2 (D. Nev. May 11, 2015) (Hicks, J.) ("As the binding decision in *Wood* had been issued prior to the filing of Shaw's second amended complaint, the court finds that Shaw had no reasonable grounds to challenge the assignment and transfer of his mortgage note and deed of trust . . . .").

Here, additional circumstances make the Greenwoods' pursuit of this case even more egregious. First, the Complaint plainly suggests that the Greenwoods were aware of their lack of standing to challenge the securitization process at the outset. At Paragraph 55, the Complaint reads: "While the Greenwoods do not claim any standing in the securitization transaction, the Greenwoods refer to the material breaches of the securitization transaction by the Defendants as evidence that the Greenwoods' Loan was not effectively and legally transferred to the securitization trust . . . ." Moreover, with their Reply brief, Defendants have submitted a copy of a "safe harbor letter," which they sent to the Greenwoods' attorney on September 8, 2017, approximately one month prior to filing the instant summary judgment motion. (ECF No. 37-1.) The letter begins: "As we have discussed several times since the beginning of this case, it is my client's position . . . that the Greenwoods do not have standing to maintain their claims based on a challenge to the Assignment of the Deed of Trust." The letter then goes on to discuss *Wood* and *Shaw*, cited above, and concludes with the language: "We would entertain an offer to stipulate to

dismissal with each side to bear its own fees and costs. We consider the maintenance of this case a blatant violation of Rule 11 . . . ."

Notwithstanding their awareness of *Shaw* and knowledge of its applicability to their case, the Greenwoods continue to pursue this action, now admitting in their Response that Defendants' lack-of-standing argument "actually has merit," and requesting leave to amend their Complaint. (Resp. 16, ECF No. 34.) On this basis, the Court finds the Greenwoods have brought or maintained this action without reasonable grounds, and will order them to show cause why they should not be subject to sanctions in this matter. The Court also invites Defendants to file, if they so desire, any motions for attorneys' fees as may be appropriate.

**CONCLUSION**

IT IS HEREBY ORDERED that the motion for summary judgment (ECF No. 32) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs have thirty days from the date of this order to file a memorandum of points and authorities showing cause why sanctions should not be imposed against them for the filing and maintenance of this case.

IT IS SO ORDERED.

_____
ROBERT C. JONES
United States District Judge

April 17, 2018.