UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JERRY GREENWOOD et al., | |
| Plaintiffs, | 3:16-cv-00527-RCJ-VPC |
| vs. | |
| OCWEN LOAN SERVICING LLC et al., | ORDER |
| Defendants. | |

This is an action to quiet title. Now pending before the Court is Defendants' motion for attorneys' fees. (Mot. Att'y Fees, ECF Nos. 44, 53.) For the reasons given herein, the Court grants the motion.

I. FACTS AND PROCEDURAL HISTORY

The Court provided a detailed history of this case in a prior order, and it need not be fully reproduced here. (*See* Order 1–5, ECF No. 42.)

In brief, on September 9, 2016, based on what they claimed to be a "botched securitization" of their home loan, Plaintiffs Jerry and Gina Greenwood filed this action seeking a decree that they are the owners of the subject property, and that "Defendants, and each of them, have no estate, mortgage, title, or interest in or to the Greenwoods' Property." (Compl. 12, ECF No. 1-2.) On April 17, 2018, the Court granted summary judgment for Defendants. The Court held, first, that the claims asserted in this action are precluded by a final adjudication in a prior

adversary proceeding before the bankruptcy court. And second, under the binding precedent of *Wood v. Germann*, 331 P.3d 859 (Nev. 2014), the Greenwoods clearly "lack standing to challenge the assignments of the Note and DOT or to assert claims arising under the trust purchase agreement or Pooling and Servicing Agreement surrounding the securitization of the Note." (Order 9, ECF No. 42.) Accordingly, because the Greenwoods premised this case on precisely the same argument rejected by the Nevada Supreme Court in *Wood*, the Court ordered the Greenwoods to show cause why sanctions should not be imposed against them for bringing and maintaining this case without reasonable grounds.

Now before the Court are the Greenwoods' response to the order to show cause and Defendants' motion for attorneys' fees under NRS § 18.010(2)(b).

## II. LEGAL STANDARDS

"In diversity actions, federal courts are required to follow state law in determining whether to allow attorneys' fees." *Swallow Ranches, Inc. v. Bidart*, 525 F.2d 995, 999 (9th Cir. 1975). NRS § 18.010(2)(b) provides that a prevailing party can obtain an award of attorneys' fees if the court finds the action was "brought or maintained without reasonable ground." The Nevada Supreme Court has often expressed that the decision to award attorneys' fees under section 18.010(2)(b) is "within the sound discretion of the district court." *Kahn v. Morse & Mowbray*, 117 P.3d 227, 238 (Nev. 2005). However, the statute also gives considerable guidance touching on how the Legislature intended courts to exercise their discretion:

> The court shall liberally construe the provisions of this paragraph in favor of awarding attorney's fees in all appropriate situations . . . to punish for and deter frivolous or vexatious claims and defenses because such claims and defenses overburden limited judicial resources, hinder the timely resolution of meritorious claims and increase the costs of engaging in business and providing professional services to the public.

/ / /

## III. ANALYSIS

### a. Whether attorneys' fees should be awarded under NRS § 18.010(2)(b)

Because the binding decision in *Wood* was issued prior to the filing of this action, the Court finds the Greenwoods had no reasonable grounds to challenge the securitization of their Note. The Greenwoods conceded their lack of standing in response to Defendants' summary judgment motion:

> In their Motion for Summary Judgment, the Defendants argue that a loan assignment made in violation of a pooling and servicing agreement is voidable and not void. This argument actually has merit. The Greenwoods acknowledge that in *Wood v. Germann*, 130 Nev. Adv. Op. 58, 331 P.3d 859, 861 (decided Aug. 7, 2014), the Nevada Supreme Court concluded that the assignment of a mortgagor's mortgage and the underlying promissory note to the trustee of a securitized mortgage loan trust after the closing date established by the trust's pooling and servicing agreement (PSA) was not void, but was merely voidable; therefore, the mortgagor lacked standing to challenge the validity of the assignment, because the trustee was entitled to ratify the post-closing agreement. Therefore, the Greenwoods are willing, if the Court deems it necessary, to amend their August 10, 2016, Complaint to conform to the holding in *Wood* . . . .

(Resp. 16, ECF No. 16.)

In their response to the Court's show cause order, the Greenwoods make two main arguments to avoid an assessment of attorneys' fees. First, they assert they were unaware of *Wood* until September 8, 2017, about one year after filing their Complaint and two months prior to the filing of Defendants' summary judgment motion. It was on this date that Defendants' counsel sent the Greenwoods a safe harbor letter stating: "As we have discussed several times since the beginning of this case, it is my client's position . . . that the Greenwoods do not have standing to maintain their claims based on a challenge to the Assignment of the Deed of Trust." (*See* Letter, ECF No. 37-1.) Attached to the letter was a copy of the Nevada Supreme Court's opinion in *Wood*. The letter also cited *Shaw v. CitiMortgage, Inc.*, No. 3:13-cv-445, 2015 WL 2194210 (D. Nev. May 11, 2015), in which Judge Larry Hicks awarded attorneys' fees against a

plaintiff for bringing the same type of securitization challenge after the issuance of the *Wood* decision. The letter also included an offer to accept a dismissal with prejudice, with each party to bear its own fees and costs. Of course, the Greenwoods did not accept this offer.

The Court is not satisfied with the Greenwoods' argument. *Wood* is a published decision of the Nevada Supreme Court, which predates the filing of this case by more than two years, and which is on all fours with the primary, if not only, legal theory raised in the Greenwoods' Complaint. It is extremely likely to have turned up in any earnest research of the Nevada precedents applicable to this case. Implicit in NRS § 18.010(2)(b) is the Nevada Legislature's judgment that litigants in this state must be cautious in their pursuit of legal claims, and take upon themselves the responsibility of ensuring that there is a reasonable basis for those claims before asserting them in court. The filing of a lawsuit forces defendants to incur costs, which are very often substantial. It is not enough for a plaintiff simply to claim ignorance of the law applicable to his own claims, after filing and maintaining a baseless action for over a year, and needlessly generating tens of thousands of dollars in legal expenses. Moreover, after being specifically advised of *Wood* in Defendants' safe harbor letter, the Greenwoods did not promptly address the fact that their Complaint was without reasonable grounds. Rule 11's safe harbor period is only twenty-one days, and the Greenwoods took no action to withdraw or amend their pleading during that time. On October 5, 2017, after the expiration of the safe harbor period, the Greenwoods engaged with Defendants in a settlement conference, but did not reach a settlement agreement. On November 12, Defendants filed their summary judgment motion, which the Greenwoods opposed. Despite the fact that the settlement conference and summary judgment motion required Defendants to incur further legal expenses, it was not until the Greenwoods' response to the motion that they first acknowledged their Complaint's lack of merit.

///

The Greenwoods' second main argument against attorneys' fees is that even if their securitization theory is foreclosed by *Wood*, their Complaint nonetheless states a valid claim to quiet title under *Edelstein v. Bank of New York Mellon*, 286 P.3d 249 (Nev. 2012). In *Edelstein*, the Nevada Supreme Court stated that "[s]eparation of the note and security deed creates a question of what entity would have authority to foreclose, but does not render either instrument void." *Id.* at 259 (internal quotation omitted). "After being split, the documents, and their respective interests, survive even if held by different parties." *In re Montierth*, 354 P.3d 648, 650 (Nev. 2015) (brackets and internal quotation omitted) (citing *In re Phillips*, 491 B.R. 255, 275 (Bankr. D. Nev. 2013)). However, "both the promissory note and the deed must be held together to foreclose; the general practical effect of severance is to make it impossible to foreclose the mortgage." *Edelstein*, 286 P.3d at 258 (brackets and internal quotation omitted).

The Greenwoods' challenge under *Edelstein* is that none of the Defendants can prove it is presently entitled to enforce both the Note and the Deed of Trust ("DOT"). However, even if this allegation is true, it is immaterial to the validity and viability of either instrument. Splitting a promissory note and deed of trust "does not render either instrument void," and does not affect the interest either document protects. The Greenwoods argue they can use a quiet title action at any time to force Defendants to show that they hold both the Note and DOT. (Resp. 9, ECF No. 48.) In this case, if no Defendant were able to make that showing, the Greenwoods claim they would be entitled to a decree that they are the owners of the Property, and that "Defendants, and each of them, have no estate or interest whatsoever in or to the . . . Property adverse to the Greenwoods." (Compl. 12, ECF No. 1-2 at 13.) This argument is unsupported by case law, incompatible with *Edelstein*, and, quite frankly, absurd. No defendant has taken steps toward foreclosure; not so much as a notice of default has been recorded against the Property. Yet, the only practical effect of splitting the Note and DOT is to render *foreclosure* impossible.

Therefore, the best possible outcome of the Greenwoods' premature *Edelstein* challenge, if successful, would be an advisory opinion that no Defendant is presently entitled to foreclose the DOT. And beyond being merely advisory, such an opinion would be entirely unhelpful, because it would only restate what *Edelstein* has already clearly established. Furthermore, *Edelstein* expressly held that a party may cure a split by reunifying the promissory note and deed of trust, and then pursue foreclosure. Thus, a court would directly contradict *Edelstein* by ruling, at any time, that a party holding one instrument is left with "no estate or interest whatsoever" in the subject property merely because it is unable to show it holds the other. And the Greenwoods—even if successful in proving that the Note and DOT are currently split—would certainly not be entitled to the relief they seek: a judicial declaration that they own the Property free and clear.

Therefore, the Court finds the Greenwoods have failed to show they had reasonable grounds for bringing this action, and an award of attorneys' fees is appropriate under NRS § 18.010(2)(b). *See Shaw*, 2015 WL 2194210, at *2.

### b. Whether the fees requested by Defendants are reasonable

With respect to the amount of fees, the Court recognizes that, in Nevada, the method upon which a reasonable fee is determined is subject to the discretion of the court which is tempered only by reason and fairness. *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 548–49 (Nev. 2005). In determining the amount of fees to award, the Court is not limited to one specific approach, "its analysis may begin with any method rationally designed to calculate a reasonable amount, including those based on a 'lodestar' amount or a contingency fee." *Id.* at 549. However, the Court must consider the requested amount in light of the factors enumerated in *Brunzell v. Golden Gate Nat. Bank*, 455 P.2d 31 (Nev. 1969), which include the advocate's professional qualities, the nature of the litigation, the work performed, and the result.

Defendants request a total of $47,103.07 in attorneys' fees. (Suppl. Mot. Att'y Fees 2, ECF No. 53.) The Court finds the request reasonable and will award the full amount. Notably, Defendants and their counsel took effective steps to manage and mitigate their litigation expenses. Defendants' representation was consolidated in one firm, which undoubtedly reduced their fees by eliminating duplicative work. Counsel also appropriately distributed their workload among experienced attorneys, associates, and law clerks, which resulted in a very reasonable average rate of $216.41 per hour. (Mot. Att'y Fees 9, ECF No. 44.) In fact, all of counsel's hourly rates for this case are well below the high end of what is commonly approved in this District, with partner rates topping out at $248. The Court further finds that counsel are experienced and well-qualified attorneys, with Ms. Lehman in particular having focused her practice on real property matters for the past ten years. Counsel's motions were well-written, addressed pertinent legal issues, and cited relevant and accurate law to obtain a full summary judgment—a very good result for Defendants. Lastly, while the issues in this case were neither novel nor particularly difficult, the Court has reviewed counsel's affidavits and billing records and finds the hours billed to be commensurate with the work necessary to defend this case diligently.[1]

///

///

///

///

---

[1] The Court also notes that the Greenwoods did not respond to the motion for attorneys' fees. Therefore, although they argued in response to the Court's show cause order that attorneys' fees should not be imposed at all, they presented no argument specifically regarding the amount of Defendants' fee request. The Court makes this observation only to highlight the lack of argument, and does not base its award of fees on the Greenwoods' failure to respond.

## CONCLUSION

IT IS HEREBY ORDERED that the motion for attorneys' fees (ECF Nos. 44, 53) is GRANTED in the amount of $47,103.07.

IT IS SO ORDERED.

_____
ROBERT C. JONES
United States District Judge

July 24, 2018.